**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| K.S., a minor, by and through his Parents and Natural Guardians, THOMAS and DONNA SCHENK, Plaintiff | : : : : : | No. 3:19-cv-00304 RDM |
| v. | : : | |
| THE POTTSVILLE AREA SCHOOL DISTRICT, Defendant | : : : | JURY TRIAL DEMANDED |

**PLAINTIFF'S BRIEF IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

AND NOW, comes K.S., a minor, by and through his Parents and Natural Guardians, Thomas and Donna Schenk, and submit the following Brief in Opposition to the Defendant's Motion to Dismiss.

**I.  STATEMENT OF FACT**

The Court is by now well aware of the facts of this case. With an eye towards brevity, the Plaintiff incorporates by reference the allegations of his Amended Complaint. In light of those well-pled averments, the instant Motion should be denied in its entirety.

**II.  STANDARD OF REVIEW**

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a pleading. *See Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990).  In considering a 12(b)(6) motion, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to

relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir. 2002)).

A complaint may not be dismissed "merely because it appears unlikely that the plaintiff . . . will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Bell Atlantic Corp. v. Twombley*, 127 S.Ct. 1964-65, 1969, n. 8 (2007)). Dismissal is only appropriate if "accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff . . . [the] plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011).

### III. STATEMENT OF QUESTIONS PRESENTED

A. **MUST THE MOTION TO DISMISS BE DENIED ON COUNT I WHERE THE PLAINTIFF HAS SUFFICIENTLY PLED A CAUSE OF ACTION FOR VIOLATION OF DUE PROCESS?**

*Suggested answer: Yes.*

B. **MUST THE MOTION TO DISMISS BE DENIED ON COUNT II WHERE THE PLAINTIFF HAS SUFFICIENTLY PLED A CAUSE OF ACTION FOR VIOLATION OF FIRST AMENDMENT RIGHTS?**

*Suggested answer: Yes.*

C. **MUST THE MOTION TO DISMISS BE DENIED ON COUNT III WHERE THE PLAINTIFF HAS SUFFICIENTLY PLED A CAUSE OF ACTION FOR VIOLATION OF EQUAL PROTECTION OF LAW?**

*Suggested answer: Yes.*

D. **MUST THE MOTION TO DISMISS BE DENIED ON COUNT IV WHERE THE PLAINTIFF HAS SUFFICIENTLY PLED A CAUSE OF ACTION FOR OVERBREADTH AND VAGUENESS?**

*Suggested answer: Yes.*

## IV. ARGUMENT

### A. THE MOTION TO DISMISS MUST BE DENIED ON COUNT I BECAUSE THE PLAINTIFF HAS SUFFICIENTLY PLED A CAUSE OF ACTION FOR VIOLATION OF DUE PROCESS.

When a student faces a suspension of ten days or less, the general requirement is that the student "must be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence that authorities have and an opportunity to present his side of the story." *See id.* at 581. The accused's right to present his side of the story must be afforded "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). The essential component of a "meaningful" hearing is a sufficient explanation of the evidence so as to permit a meaningful response. *Fraternal Order of Police Lodge No. 5 v. Tucker*, 868 F.2d 74, 80 (3d Cir. 1989).

In this case, the Plaintiff has clearly alleged that he was not adequately advised of the nature of the charges against him, and as such could not meaningfully respond to them. Specifically, Plaintiff has lodged the following allegations:

> 51. K.S. was denied due process because he was not properly advised of the allegations against him, which deprived him of the opportunity to meaningfully responding to those allegations.
>
> 52. More specifically, K.S. was never informed of the following pertinent allegations: (i) when the alleged "dancing" occurred; (ii) where the alleged "dancing" occurred; (iii) what the alleged "dancing" consisted of; (iv) how the alleged "dancing" constituted "harassment;" and (v) how the alleged "dancing" negatively affected the educational environment, academic performance or learning opportunities of any Student in the District, which is required to make the policy applicable.

53.   In light of the fact that this information was not verbally given to K.S. and his parents, they requested an opportunity to look at the written statements that allegedly implicated K.S. in violation of the aforementioned policy, but such requests were repeatedly denied.

54.   Having not been informed of the specific nature of the allegations against him, K.S. requested the opportunity to present witnesses on his own behalf, but was denied the opportunity to do so.

(*See* Rec Doc. 26 at ¶¶ 51-54).

It is Plaintiff's contention that without the information specified above, K.S. was not sufficiently advised of the nature of allegations against him such that he could adequately address them. After all, how could someone meaningfully respond to a vague allegation of "dancing inappropriately" when there is no time frame placed on the allegation, when a description of the dancing is not given, when a location of the dancing is not given, and when there is no indication how the dancing was "inappropriate?" These are the most basic pieces of any investigation—the "who," "what," "when," "where," and "why"—but Plaintiff was not provided this information.  Plaintiff alleges—and that is all he is required to do at this stage—that he was not able to meaningfully respond due to the utter failure of the District to provide the most basic details required by law. Because of this, the instant Motion should be denied.

Moreover, the Plaintiff has also alleged that the District violated its own policy that required it to provide him with the results of the investigation it had allegedly conducted into the allegations. (Rec. Doc. 26 at ¶ 55). K.S. has alleged that the District's failure to provide him with the results of the investigation further hindered his ability to adequately respond to the allegations made against him. (*See id*.).  This is another

4

example of the District's failure to provide K.S. with the most basic details surrounding the allegations against him, and it is another reason why the instant Motion should be denied.

      **B.    THE MOTION TO DISMISS MUST BE DENIED ON COUNT II BECAUSE THE PLAINTIFF HAS SUFFICIENTLY PLED A CAUSE OF ACTION FOR VIOLATION OF FIRST AMENDMENT RIGHTS.**

The Defendant argues that K.S.'s First Amendment claim should be dismissed because his "dancing" was "recreational dancing," which was not entitled to First Amendment protections. The Defendant's argument should be rejected at this stage.

Speech, including expressive conduct, that is explicit but not obscene is protected under the First Amendment. *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 66 (1981). To determine whether particular conduct is sufficiently "expressive" or enough to qualify for First Amendment protection, courts must determine whether the activity is "sufficiently imbued with the elements of communication" such that there is an intent to convey a "particularized message" along with a great likelihood that the message will be understood by those viewing it. *Texas v. Johnson*, 491 U.S. 397, 404.

In the case at bar, the Defendant makes a blanket statement that the type of conduct involved in this case is "recreational dancing." Due to the District's complete unwillingness to provide K.S. with even the most basic details surrounding the allegations of his purported misconduct, the nature and extent of the alleged dancing is only known by the District. As such, the true nature and extent of the alleged "dancing" is a matter that can only be appropriately determined after discovery is completed. Plaintiff has alleged—and that is all that he is required to do at this stage—that whatever

5

"dancing" may have occurred was expressive conduct that qualifies for First Amendment protection. (Rec. Doc. 26 at ¶ 73). It is respectfully suggested that given the District's refusal to provide K.S. with a description of the "dancing" in which he is alleged to have engaged,[1] a factual record needs to be developed, and is necessary, in order to properly determine whether the alleged conduct falls within the ambit of the First Amendment, *i.e.* whether the activity was "sufficiently imbued with the elements of communication" such that there is an intent to convey a "particularized message." *Texas v. Johnson*, 491 U.S. 397, 404. In that regard, Defendant's Motion is premature and should be denied as such.

Moreover, with regard to the merits of Defendant's bald contentions, "recreational dancing" is typically defined as dancing that occurs at a public recreational establishment such as a bar or dance hall. *See City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989). There are no allegations in the Amended Complaint that would raise the specter that the type of dancing involved in this case qualifies as "recreational dancing."[2] Again, a factual record needs to be developed in order to determine whether or not the activity involved comes within the ambit of the First Amendment.[3]

Based on the above, the instant Motion should therefore be denied at this stage, and the Parties should be afforded the opportunity to pursue discovery, after which time

---

[1] The District should not be heard to claim that the Plaintiff's allegations are insufficiently specific when the reason for any perceived lack of specificity is the District's unwillingness to share information with K.S. and his parents.

[2] "Social dancing"—cultural, ceremonial, or ritualistic dancing—has been recognized as being different than "recreational dancing." *Muchmore's Café LLC v. City of New York,* 2016 WL 11469539 (E.D.N.Y. 2016 **(attached as Exhibit B).** To the extent that the dancing at issue could constitute cultural, ceremonial, or ritualistic dancing, it would not qualify as "recreational" in nature and may be subject to First Amendment protections.

[3] To the extent that the allegation of misconduct involves nude dancing—again, this is unclear due to the Defendant's unwillingness to share basic information with K.S. and his parents—it is noted that nude dancing falls under the ambit of the First Amendment. *See Conchatta, Inc. v. Evanko*, 83 Fed. App'x 437 (3d Cir. 2003); *see also City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000).

the Defendant would be free to resubmit its argument to the Court in the form of a Motion for Summary Judgment.

> **C. THE MOTION TO DISMISS MUST BE DENIED ON COUNT III BECAUSE THE PLAINTIFF HAS SUFFICIENTLY PLED A CAUSE OF ACTION FOR VIOLATION OF EQUAL PROTECTION OF LAW.**

The Defendant asserts that in order to prevail on his Equal Protection claim, K.S. must allege that he was treated selectively when compared to other similarly situated individuals, and that such treatment was based on impermissible considerations such as race, religion, intent to inhibit/punish the exercise of constitutional rights, or malicious or bad faith intent to injure him. (*See* Rec. Doc. 34 at p. 5). The Defendant is wrong.

Plaintiff is advancing a "class-of-one" Equal Protection claim. Under this Equal Protection Theory, Plaintiff need only allege that Defendant: (i) treated him differently than other similarly situated individuals; (ii) such treatment was intentional; and (iii) there was no rational basis for the difference in treatment. *Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir. 2006). Contrary to Defendant's assertion, to advance a class-of-one theory, <u>K.S. need not allege that he was a member of a protected class or that the disparate treatment was due to his membership in such a class</u>. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Harlen Assoc. v. Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (stating that class-of-one claims extend to "individuals who allege no specific class membership"); *Montanye v. Wissahickon Sch. Dist.*, 327 F.Supp. 2d 510, 517 (E.D. Pa. 2004) (declining to dismiss a class-of-one claim on the grounds that

plaintiff failed to allege membership in a protected class, noting that such an allegation is not a requirement of the class-of-one theory).

A plain reading of the Plaintiff's Amended Complaint reveals that he has alleged all three elements of the class-of-one claim. First, he has sufficiently alleged that he was treated differently than similarly situated individuals. (*See* Rec. Doc. 26 at ¶¶ 94-107).[4] Second, K.S. has alleged that the disparate treatment was intentional. (*See* Rec. Doc. 26 at ¶¶ 94, 98, 104, 107). Third, he has alleged that there was no rational basis for the disparate treatment. (*See* Rec. Doc. 26 at ¶¶ 95, 98, 100, 104, 106, 107). At this stage, those allegations are sufficient to defeat the instant Motion and proceed to the discovery phase of the litigation. As such, the instant Motion should be denied.

**D. THE MOTION TO DISMISS MUST BE DENIED ON COUNT I BECAUSE THE PLAINTIFF HAS SUFFICIENTLY PLED A CAUSE OF ACTION FOR OVERBREADTH AND VAGUENESS.**

Overbreadth

A policy is unconstitutionally overbroad when there is "a likelihood that the [policy's] very existence will inhibit free expression" by "inhibiting the speech of third parties who are not before the court." *Member of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 799 (1984); *R.L. v. Central York Sch. Dist.*, 183 F.Supp. 3d 625 (M.D. Pa. 2016) (citations omitted). The Plaintiff has alleged that the Policy is unconstitutionally overbroad because: (i) it punishes conduct that is otherwise protected by federally

---

[4] It is important to note that "[g]eneral allegations that a plaintiff was treated differently from others similarly situated are sufficient, and a plaintiff need not identify in a complaint actual instances where others have been treated differently for purposes of equal protection." *Shkedi v. Scranton*, 2015 WL 1505660 at * 10 (M.D. Pa. 2015) (internal quotations omitted) (citing Phillips, 515 F.3d at 243) **(attached as Exhibit C)**.

8

secured rights; (ii) it punishes speech and expressive conduct simply because another person might take offense to the content of the speech or conduct; and (iii) it punishes speech and expressive conduct simply because it causes discomfort or unpleasantness. (Rec. Doc. 26 at ¶¶ 124-26).

The Policy defines "harassment" as follows:

For purposes of this policy, harassment shall consist of verbal, written, graphic or physical conduct relating to an individual's race, color, national origin/ethnicity, sex, age, disability, sexual orientation or religion when such conduct:

1. Is sufficiently severe, persistent or pervasive that it affects an individual's ability to participate in or benefit from an educational program or activity or <u>creates an intimidating, threatening or abusive educational environment</u>.

2. Has the <u>purpose or effect</u> of <u>substantially or unreasonably interfering with an individual's academic performance</u>.

3. Otherwise adversely affects an individual's learning opportunities.

*See* **Exhibit A, at p. 1, Definitions Section (emphasis added).**

The Policy at issue in this case bears a strong resemblance to the harassment policy involved in the case of *Saxe v. State College Area Sch. Dist*, 240 F.3d 200 (M.D. Pa. 2001). In *Saxe*, the State College Area School District adopted a harassment policy that set forth the definition of harassment as follows:

Harassment means verbal or physical conduct based on one's actual or perceived race, religion, color, national origin, gender, sexual orientation, disability, or other personal characteristics, and which has the <u>purpose or effect</u> of <u>substantially interfering with a student's educational performance</u> or <u>creating an intimidating, hostile or offensive environment.</u>

*See id.* at 215 (emphasis added).[5]

In an opinion authored by now Justice Samuel Alito, the *Saxe* Court noted that the definition of harassment was facially overbroad because it purported to ban any unwelcome conduct which offended an individual because of some enumerated personal characteristic. *See id.* Stated differently, the policy did not "confine itself merely to vulgar or lewd speech; rather, it reaches any speech that interferes or is intended to interfere with educational performance or that creates or is intended to create a hostile environment." *See id.* at 216. Moreover, the Court noted that the harassment policy had no geographical scope, and therefore could be applied to "harassment" occurring in any location as well as private student speech that occurred on school premises. *See id.* at 216. The Court stated that since the policy prohibited a substantial amount of non-vulgar, non-sponsored student speech, the district needed to show that the policy's restrictions were necessary to prevent substantial disruption or interference with the work of the school or the rights of students. *See id.* at 216. The Court concluded that the district could not satisfy its burden because the policy prohibited not only speech that *actually* caused substantial disruption or interference in the educational process, but also speech that *intended* to cause such substantial disruption or interference, and as such ignored the mandate propounded in *Tinker v. Des Moines Indep. Com. Sch. Dist.*, 393 U.S. 503 (1969). *See id.* at 216-17.

---

[5] For ease of reference, the undersigned has underlined the portions of the District's Policy and the portions of the policy in *Saxe* that are similar or identical to each other.

The Policy ratified by the Pottsville Area School District suffers from the same infirmities as the policy in *Saxe*. The District's policy clearly does not constrict its application to lewd or vulgar speech; rather, like the policy is *Saxe*, it purports to ban any unwelcome conduct that has the purpose or effect of substantially impacting a student's education or academic performance. In declaring the State College policy unconstitutional, the *Saxe* Court implicitly held that a policy was unconstitutional if it included a blanket prohibition on conduct that had the purpose or effect of substantially interfering with a student's educational performance. That is exactly what the District's Policy purports to do. The same rationale that invalidated the policy in *Saxe* should therefore operate to invalidate the District's policy.

Further, like the policy in *Saxe*, the District's policy does not contain a geographic limitation—it purportedly applies anywhere, *i.e.,* in school, in a locker room, at a school sponsored event, or off campus. As such, the District must show that the Policy's restrictions are necessary to prevent substantial disruption or interference. As was the case in *Saxe*, the District cannot satisfy this requirement because the Policy applies to conduct that not only *actually* interferes with academic performance but also to conduct that *has the purpose of* interfering with such performance. As the *Saxe* Court held, such language in a school district policy falls short of the actual, material disruption requirement pronounced in *Tinker*.

Moreover, the *Saxe* Court opined that the policy at issue was problematic because it banned conduct that created "an intimidating, hostile, or offensive environment." In analyzing that language, the Third Circuit stated, "The Supreme Court has held time and

11

again, both within and outside of the school context, that the mere fact that someone might take offense at the content of speech is not sufficient justification for prohibiting it." *See id.* (citations omitted). The *Saxe* Court noted that "it is certainly not enough that the speech is merely offensive to some listener." *See id.* (citations omitted). The Court stated that the policy was unconstitutionally broad because it could be applied to conduct that did not pose a realistic threat of substantial disruption and was therefore well within a student's right. *See id.* The language in the District's Policy is extremely similar in that it prohibits conduct that "creates an intimidating, threatening or abusive educational environment." As the *Saxe* Court noted, conduct cannot be prohibited simply because someone might take offense to it. The Policy, like its counterpart in *Saxe*, could conceivably be applied to cover any conduct about an enumerated characteristic that offends someone—even if it involves "core" speech. As was the case in *Saxe*, there is no specifically defined threshold requirement of severity in the District's Policy.[6] Because the District cannot prohibit conduct based on an "undifferentiated fear or apprehension of disturbance" this Court should follow in the footsteps of the *Saxe* Court and hold the policy unconstitutionally overbroad. *See id.* at 217.

<u>Vagueness</u>

A school policy can be void for vagueness by either (i) failing to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits, or (ii)

---

[6] Although the District's Policy requires the conduct to be "severe" or pervasive," there is no indication what is meant by these adjectives. The Policy in *Saxe* also required the conduct to be "severe" but failed to expound upon what that meant. Without any clarification, the Third Circuit held that the policy in *Saxe* did not sufficiently impose adequate thresholds that would bring it within constitutional requirements. The same is true of the Policy here.

by authorizing and even encouraging arbitrary and discriminatory enforcement. *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999).

With regard to the first prong of the vagueness inquiry, the Plaintiff has alleged that the Policy fails to provide adequate notice in the following ways: (i) it does not apprise reasonable people of what qualifies as being "sufficiently severe," "sufficiently persistent," or "persistently pervasive;" (ii) it does not apprise reasonable people of what needs to be shown or demonstrated to prove that an individual's ability to participate in or benefit from an educational program or activity has been "affected," (iii) it does not apprise reasonable people of what qualifies as an "intimidating, threatening or abusive educational environment," (iv) it does not apprise reasonable people of what needs to be shown or demonstrated to prove that conduct has "substantially or unreasonably" interfered with a person's academic performance; (v) it does not define what is meant by "academic performance;" (vi) it does not apprise reasonable people of what needs to be shown or demonstrated to prove that an individual's "learning opportunities" have been "adversely affected;" (vii) it does not specify whether the threes prong of the harassment definition, referenced above, are conjunctive or disjunctive; (viii) it does not specify whether the three prongs of the harassment definition can be met only by the alleged victim of the harassment or if the policy can be invoked if a person other than the alleged victim satisfies one or more of the prongs. (*See* Rec. Doc. 26 at ¶¶ 115-22).

All of the afore-stated vagueness and imprecision leaves one, basic question essential to this case in doubt—Does the Policy apply to non-students? Certainly, a plain reading of the Policy appears to indicate that conduct towards a non-student—like the 25-

year-old football associate in this case—does not violate the Policy. Indeed, the Policy repeatedly suggests that the type of conduct that is prohibited is conduct that will have some sort of effect on a student's education. Again, the three prongs of the Policy address conduct that:

> 1. Is sufficiently severe, persistent or pervasive that it affects an individual's ability to participate in or benefit from an educational program or activity or creates an intimidating, threatening or abusive <u>educational environment</u>.
>
> 2. Has the purpose or effect of substantially or unreasonably interfering with an <u>individual's academic performance</u>.
>
> 3. Otherwise adversely affects an individual's <u>learning opportunities.</u>

***See* Exhibit A, at p. 1, Definitions Section (emphasis added).** These prongs cannot legitimately be read to apply to a 25-year-old associate of the football team because that individual is not a student and, as such, any conduct towards him cannot negatively affect his education. Yet, the District in this case applied the Policy to a 25-year-old, non-student who education could not have possibly been affected by the alleged conduct of the Plaintiff. To the extent that the District's position is that the Policy was properly and appropriately applied to K.S. because of the alleged dancing in front of the 25-year-old non-student, Plaintiff suggests that the Policy is entirely vague and ambiguous and does not appropriately place students on notice that it can be applied to non-students.

With regard to the second prong of the vagueness analysis, Plaintiff has also alleged that the Policy lends itself to arbitrary and discriminatory application and enforcement. (*See* Rec. Doc. 123). Given the aforementioned lack of precision in the definition of key terms in the Policy, the individuals responsible for enforcing the Policy

are given extreme and unbridled latitude in interpreting its meaning. Because there are no definitions provided for the phrases "sufficiently severe," "sufficiently persistent," or "persistently pervasive" these terms could be interpreted quite differently by different people. There are simply no normative standards that would give students an idea of what type of conduct is prohibited. As such, the Policy inherently lends itself to arbitrary and discriminatory application and enforcement. *See Killion v. Franklin Regional Sch. Dist.*, 136 F.Supp. 2d 446, 459 (W.D. Pa. 2001) (for proposition that policy is unconstitutionally vague when the meaning of key terms is left to the subjective reference of school officials). This renders it unconstitutionally vague.

Given the above, it is respectfully suggested that the Plaintiff has lodged a facially plausible vagueness claim. At this stage, the Court should deny the instant Motion relative to that claim.

Respectfully submitted,

FANELLI, EVANS & PATEL, P.C.

By: */s/ Albert J. Evans*
     ALBERT J. EVANS, ESQUIRE
     Attorney I.D. #68872
     ERIC M. PROCK, ESQUIRE
     Attorney I.D. #208315
     No. 1 Mahantongo Street
     Pottsville, PA 17901
     (570) 622-2455
     *Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **K.S., a minor, by and through his Parents and Natural Guardians, THOMAS and DONNA SCHENK,** | : NO. 3:19-cv-00304-RDM |
| **Plaintiff** | : |
| vs. | : |
| **THE POTTSVILLE AREA SCHOOL DISTRICT,** | : |
| **Defendant** | : **JURY TRIAL DEMANDED** |

## **CERTIFICATE OF SERVICE**

The undersigned, Albert J. Evans, Esquire, attorney for Plaintiff, hereby certifies that on July 1, 2019, a true and correct copy of the ***Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss*** has been electronically filed and is available for viewing and downloading from the ECF system in accordance with the local Federal Rules of Civil Procedure and has been served electronically upon the following counsel of record this day, July 1, 2019:

jef@kingspry.com
John E. Freund, III, Esquire
kcr@kingspry.com
Kevin C. Reid, Esquire
King, Spry, Herman, Freund & Faul, LLC
One West Broad Street | Suite 700
Bethlehem, PA 18018


FANELLI, EVANS, & PATEL, P.C.

By:  */s/Albert J. Evans, Esquire*
    ALBERT J. EVANS, ESQUIRE
    *Attorney for Plaintiff*