IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| K.S., a minor, by and through his parents and natural guardians, THOMAS and DONNA SCHENK | : : : : | Civil No. 3:19-CV-00304 |
| Plaintiff, | : : | |
| v. | : : | |
| POTTSVILLE AREA SCHOOL DISTRICT, | : : : | |
| Defendant. | : : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court is Defendant Pottsville Area School District's motion to dismiss the amended complaint. (Doc. 33.) The court holds that Plaintiff K.S., by and through his parents Thomas and Donna Schenk, has sufficiently pleaded causes of action for denial of procedural due process (Count I), for a "class of one" discrimination claim under the Fourteenth Amendment (Count II), and for a facial challenge to the overbreadth or vagueness of the Defendant's anti-harassment policy (Count IV). However, the complaint has not adequately alleged facts to proceed with an "as applied" challenge to the Defendant's policy (Count III). For the reasons that follow, the court grants in part and denies in part Defendant's motion to dismiss. (Doc. 33.)

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, K.S., a student at Pottsville Area High School ("PAHS"), which is within the Defendant Pottsville Area School District ("PASD"), filed suit on February 21, 2019, seeking injunctive relief, compensatory damages, punitive damages, and attorney's fees and costs. (Doc. 1.) On May 10, 2019, K.S. filed an amended complaint, adding allegations and exhibits. (Doc. 26.)

The following facts are gleaned from Plaintiff's amended complaint and are taken as true for the purposes of ruling on PASD's motion to dismiss. On or around February 8, 2019, PASD received an anonymous complaint alleging that junior members of the PAHS football team, including K.S., engaged in some form of offensive and harassing "dancing with or without a towel" directed towards an adult associated with the team in the team's locker room at some point during the season, in violation of the district's antiharassment policy. (*See* Doc. 26, ¶¶ 10—14, 19; Doc. 26-1.) After PASD received the anonymous complaint, they conducted an investigation into the allegations. (Doc. 26, ¶ 12.) K.S. avers that PASD had an unwritten policy to not investigate anonymous complaints, but chose to investigate this complaint against him nonetheless. (Doc. 26, ¶ 11.)

On February 12, 2019, K.S. and his parents, Thomas and Donna Schenk (the "Schenks"), attended a meeting with PAHS officials, who informed them that PASD was imposing a 10-day out-of-school suspension for his alleged violation of

the policy. (Doc. 29, ¶ 19.) At that meeting, the Schenks requested to see the statements made against their son, but the officials declined their request. (Doc. 29, ¶¶ 21—22.) Thereafter, K.S. was called to an informal hearing wherein he was not given any additional information about the complaint, nor about the results of the investigation. (Doc. 26, ¶ 23—24.) K.S. called several witnesses who denied that he had ever participated in any conduct like what was alleged. (Doc. 26, ¶ 25.) The Schenks identified eight additional witnesses to testify at the hearing, but they were not permitted to call these witnesses. (Doc. 26, ¶ 26.) K.S. alleges that the victim's story was not corroborated by any evidence. K.S. specifically denied, and continues to deny, all allegations of harassment made against him by PASD. (Doc. 26, ¶¶ 17, 27.)

After the hearing, PASD found that K.S. did act in violation of their anti-harassment policy and imposed a 10-day out-of-school suspension on K.S., during which time he was unable to participate in any school activities or extracurriculars, including practicing or playing with his sports teams. K.S. also alleges that the suspension created a disciplinary record which will negatively affect his college applications. (Doc. 26, ¶¶ 28, 30, 57—59.)

On June 14, 2019, PASD filed the instant motion to dismiss Plaintiff's amended complaint and brief in support thereof. (Docs. 33–34.) Plaintiff opposed

the motion on July 1, 2019, and PASD timely filed a reply. (Docs. 37–38.) The motion is now ripe for disposition.

## JURISDICTION

The court exercises federal question jurisdiction over the constitutional matters under 28 U.S.C. § 1331; and over the related civil rights claims under 28 U.S.C. § 1343. Venue is appropriate because all actions detailed in the amended complaint occurred within the Middle District of Pennsylvania.

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines

whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

## DISCUSSION

### A. Count I: Procedural Due Process

When a school district wishes to impose a ten-day out-of-school suspension, which deprives the student of the benefit of education for a substantial amount of time, it must provide "some [due] process." *Palmer by Palmer v. Merluzzi*, 868 F.2d 90, 93 (3d Cir. 1989) (citing *Goss v. Lopez*, 419 U.S. 565 (1975)). This process must, at least, provide: "oral or written notice of the charges against [the student] and, if [the student] denies them, an explanation of the evidence the authorities have and an opportunity to present [the student's] side of the story." *Goss*, 419 U.S. at 581. However, no additional process is due when a student is suspended from extracurricular sports activities. *Palmer by Palmer*, 868 F.2d at 96.

Here, the parties agree that some procedural due process is required under *Goss*. (Doc. 26, ¶ 44; Doc. 34, at p. 3.)[1] Particularly, the parties agree that K.S. should be given oral or written notice of the charges. (Doc. 26, ¶¶ 14, 19; Doc. 34, at p. 2.) Finally, the parties agree that the K.S. denied the charges against him. (Doc. 26, ¶¶ 14, 19; Doc. 34, at p. 2.)

---

[1] For ease of reference, the court utilizes the document and page numbers from the CM/ECF header.

The parties disagree on whether the "notice" given by PASD was constitutionally adequate under *Goss*. K.S. argues that he was not afforded an opportunity to present his side of the story due to the lack of information given by PASD regarding the charges; while PASD claims that K.S. was given an opportunity to be heard after "provid[ing] the information required by law." (Doc. 26, ¶ 51; Doc. 34, at p. 4.) As such, the sufficiency of procedural due process in this case depends on whether the evidence provided to K.S. was sufficient for him to have a meaningful opportunity to tell his side of the story.

The Fourteenth Amendment only requires that a student in these circumstances be given "notice of the charges against them, and if denied, an explanation of the evidence and an opportunity to tell his side of the story." *Goss*, 419 U.S. at 581. The purpose of the notice requirement is to protect the student against "unfair or mistaken findings of misconduct and arbitrary exclusion from school." *Id*.

K.S. avers that he was given notice that he had been accused of "unspecified 'dancing' with or without a towel" in the locker room, on an unspecified date, at an unspecified time, and that the basis of the charge was an anonymous letter that was not shown or otherwise described to him in any way. (Doc. 26, ¶¶ 52–53.) K.S. further describes an informal hearing wherein he was not presented with any

additional evidence, or description of such evidence, after he specifically requested the opportunity to review the evidence. (Doc. 26, ¶¶ 23–28).

The notice, as alleged by K.S., was no more than a threadbare accusation of general misconduct. The alleged notice was unspecific as to the date and time of the conduct such that K.S. would have been able to attempt to provide an explanation or specific refutation; and was so bereft of detail that K.S. could not reasonably be expected to identify the particular conduct he was accused of, much less to respond to it in any meaningful way.

Taking the allegations in the complaint as true, K.S. did not have an opportunity to tell his side of the story because no meaningful "story" was told in the first place. Therefore, the court holds that the amended complaint sufficiently alleges a procedural due process claim under *Goss*. Taking K.S.'s allegations as true, it appears that he was denied an opportunity to meaningfully respond to the alleged violation of PASD's harassment policy because the school failed to provide sufficient information for him to provide a meaningful response. Accordingly, PASD's motion to dismiss will be denied as to Count I.

**B. Count II: First Amendment (As Applied)**

Expressive conduct speech requires both that a plaintiff had an intent to convey a message in their conduct, and that a reasonable person would interpret the conduct as displaying some sort of message. *Texas v. Johnson*, 491 U.S.

397, 404 (1989). Here, K.S. generally denies engaging in any conduct whatsoever. (Doc. 26, ¶¶ 17, 72.) K.S. does not specifically allege any instances of conduct, nor any facts which may tend to prove that the conduct was intended to convey a message, or that a reasonable person would interpret as conveying a message.

K.S.'s only allegation regarding protected conduct is that "any conduct that could be construed as dancing that K.S. may have engaged in" would be constitutionally protected. (Doc. 26, ¶ 73.) However, this is a purely speculative and conclusory statement. It does not allege any actual conduct which could form the basis of a First Amendment cause of action under 42 U.S.C. § 1983. As such, PASD's motion to dismiss will be granted as to Count II, and that Count will be dismissed without prejudice.[2]

**C. Count III: Equal Protection**

K.S. alleges a "class of one" claim of discrimination under the Fourteenth Amendment. The Third Circuit Court of Appeals has specified three elements for a "class of one" claim: (1) that a public entity treated the plaintiff differently than

---

[2] This count is dismissed without prejudice, because PASD acknowledges in the motion to dismiss that K.S. was punished for some "dancing with or without a towel" in violation of their policy. (Doc. 34, pp. 1—2.) The court recognizes that K.S. may be able to determine the actual dancing alleged by PASD in discovery, that K.S. did, in fact, participate in the dancing, and that the dancing may be protected; so, K.S. will be allowed to reallege this cause of action if such facts come to light through discovery.

8

others similarly situated; (2) that the entity did so intentionally; and (3) there was no rational basis for the difference. *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). The complaint adequately alleges these elements, albeit at a bare minimum.

With respect to the first element, K.S. alleges different treatment in that PASD chose to investigate an anonymous claim against him despite refusing to investigate anonymous claims when they were made against other students. (Doc. 26, ¶¶ 11–12.) K.S. further alleges that other similarly situated students were given access to evidence that was denied to K.S. (Doc 26, ¶ 96.) K.S. does not identify specific students who were treated differently, however such specificity is not required at this stage. *See Hill*, 455 F.3d at 239 (holding that plaintiff needed only to allege "the existence of others similarly situated,"); *cf. Vill. of Willowbrook v. Olech*, 528 U.S. 562, 565 (2000) (holding allegation that defendant proclaimed one policy and followed another with respect to plaintiff, without specifying particular "others" who were treated differently, was sufficient to allege "class of one" claim).

With respect to the second element, K.S. also asserts that PASD's actions were intentional. (Doc 26, ¶ 94.) Nothing in the amended complaint gives rise to an inference that PASD accidentally or otherwise inadvertently investigated an anonymous complaint in violation of such an unwritten policy. Moreover, it does

9

not stand to reason that such an action could be taken accidentally or inadvertently. Therefore, the court will draw a reasonable inference at this pleading stage that PASD's actions were intentional.

Finally, with respect to the third element, K.S. pleads that there was no rational basis for this discrimination. (Doc 26, ¶ 95.) Particularly, K.S. alleges that there was no "rational basis for treating [K.S.] differently than other, similarly situated students." (Doc. 26, ¶¶ 95, 100, 104.) It is unreasonable to expect that a plaintiff can do more than speculate as to the rationale of a state actor's decision to deviate from their standard practice when no such rationale has been provided to them prior to filing suit. Therefore, the mere allegation that K.S. is currently unaware of any rational basis for the challenged action is sufficient to state a "class of one" claim. *See Mun. Revenue Servs., Inc. v. McBlain*, No. 06-4749, 2007 WL 879004, at *6 (E.D. Pa. Mar. 19, 2007) (denying motion to dismiss "class of one" claim on similar allegations).

PASD relies on *Enquist v. Oregon Dep't of Agr.*, 553 U.S. 591 (2008), as discussed in dicta in two cases from the Eastern District of New York, to argue that students should not be allowed to advance "class of one" claims against a school district because their disciplinary actions are "discretionary decision-making," similar to a police officer who may constitutionally choose to give one driver a

ticket and another a warning for the same offense. (Doc. 38, p.4.) This argument is unpersuasive.

First, *Enquist* is inapposite to the instant case because PASD was not acting as an employer, where it would be allowed more leeway in making individualized decisions; rather PASD's enforcement of its policy was an exercise of its power to regulate the behavior of its students. *Enquist*, 553 U.S. at 598 ("there is a crucial difference … between the government exercising 'the power to regulate or license, as lawmaker,' and the government acting 'as proprietor, to manage [its] internal operation.'")

Second, PASD does not rely on *Enquist* directly, but to the rationale contained therein, as applied to the school context in *Vassallo v. Lando*, 591 F.Supp.2d 172 (E.D.N.Y. Oct. 31, 2008), and *DeFabio v. East Hampton Union Free Sch. Dist.*, 658 F.Supp.2d 461 (E.D.N.Y. 2009). In *Vassallo* and *DeFabio*, the Eastern District of New York explored the *Enquist* decision at length when evaluating the respective defendants' motions for summary judgment and, with almost verbatim reasoning in dicta, stated that, although *Enquist* could be read to foreclose "class of one" claims by students against schools with regard to disciplinary decisions and procedures, the Second Circuit had not extended *Enquist* in such a way. Those district courts ultimately disposed of the "class of one" claims on the merits. *Vassalo*, 591 F.Supp.2d at 189; *DeFabio*, 658 F.Supp.2d at 495. Although the

11

Third Circuit has applied the *Enquist* decision in numerous employment cases, this court has not found any case in which the Third Circuit applied *Enquist* in the school discipline context. As such, this court similarly decides to defer disposition of K.S.'s "class of one" claim to the merits.

Although sparse, the court finds that the amended complaint adequately alleges the elements of a cognizable "class of one" Equal Protection claim. Thus, PASD's motion to dismiss will be denied as to Count III.

### D. Count IV: First Amendment (Facial Challenge)

As an initial matter, school districts have decidedly more latitude to regulate the conduct of their students in school than the state is typically allowed under the First Amendment. *See Bethel School Dist. No. 403 v. Fraser*, 478 U.S. 675 (1986) (holding that a school is a non-public space and the First Amendment does not protect students' freedom of expression in a school to the same extent that it would protect the same expression in a public space, i.e. a courthouse.) Nonetheless, students are still "persons" under the Constitution and do not "shed their constitutional rights to freedom of speech and expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). As such, a school's authority to regulate the conduct of its students is not unlimited—its interest in avoiding material and substantial disruptions in learning must be balanced against the students' rights which such regulation may seek to abridge.

*Id.* Accordingly, when a litigant presents a school policy which may significantly compromise the First Amendment protections of the students subjected to it, then the court will evaluate such a policy for overbreadth. *See Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200 (3d Cir. 2001) (allowing facial First Amendment challenge of school district's anti-harassment policy for overbreadth).

Although K.S. has not properly alleged an "as applied" First Amendment claim under 42 U.S.C. § 1983, the allegations in his complaint do justify a facial review of the underlying PASD policy for overbreadth and vagueness, as PASD's anti-harassment policy may discourage other students from exercising their First Amendment rights. *See Forsyth Cty., Ga. v. Nationalist Movement*, 505 U.S. 123 (1992) (holding that a plaintiff may make a facial First Amendment challenge to a statute which was enforced against them for overbreadth, even if the application of the statute to the plaintiff was constitutional). However, the court declines to determine the constitutionality of PASD's policy at this time, because factual matters require further development, and the court is not required to make such a determination at this stage in the case.

The amended complaint alleges that many aspects of PASD's anti-harassment policy are vague and overbroad. (Doc. 26, ¶¶19—20.) Plaintiff alleged that the policy is vague because, among other reasons: (1) it uses numerous undefined terms and phrases, such as "intimidating, threatening, or hostile

13

educational environment"; and (2) the construction of the policy makes it difficult for the students to understand what behavior is and is not prohibited because, for instance, it is unclear if the three sections of the policy apply conjunctively or disjunctively. (Doc. 26, ¶¶ 113 , 115—122.) The amended complaint also alleges that the policy is constitutionally overbroad because it prohibits conduct which is protected under the First Amendment merely because a person might take offense to the conduct. (Doc. 26, ¶¶ 124—126.)

The Third Circuit applied *Tinker* and its progeny to a similar anti-harassment policy from another Pennsylvania school district in *Saxe v. State College Area School District*, 240 F.3d 200 (3d Cir. 2001). In *Saxe*, the school district's policy was invalidated for overbreadth because the district attempted to prohibit all conduct which had the "purpose or effect" of "creating an intimidating, hostile or offensive environment" for any student. *Id* at 218. The court held that such a policy was overbroad for three reasons: (1) the policy was not limited to vulgar or lewd speech, or speech which might open the schools to litigation; (2) the policy lacked any geographic or contextual limitations; and (3) the policy did not contain any requirement as to severity or pervasiveness. *Id* at 216–217. The court was particularly concerned with the third aspect of the policy which, even narrowly read, prohibited speech which was "merely offensive to some listener," justified only by an "undifferentiated fear or apprehension of disturbance." *Id* at 217. The

court held that, under *Tinker*, the policy was overly broad based on the fact that, on its face, the "hostile environment" clause ostensibly prohibited any hypothetically offensive speech inside or outside of the school. Moreover, even if the clause had a reasonable scope, it failed the *Tinker* test because the school's generalized fear of hostility amongst its pupils did not justify such a broad regulation of student speech. *Id*.

Nonetheless, *Saxe* also allows PASD the opportunity to present evidence to show that it had a well-founded expectation that the conduct prohibited by its policy would cause a significant disruption, particularly if it could show past incidences of disruption by similar activity. *See, e.g., Saxe*, 240 F.3d at 212 ("[I]f a school can point to a well-founded expectation of disruption – especially one based on past incidents arising out of similar speech – the restriction may pass constitutional muster."). The court cannot determine the constitutionality of the anti-harassment policy at issue in this case until PASD has had such an opportunity. Thus, the court finds that K.S.'s amended complaint properly alleges a claim of overbreadth and vagueness, but reserves judgment on the constitutionality of PASD's anti-harassment policy until evidence regarding PASD's justification for the policy can be developed and presented. Similarly, K.S.'s claim that the policy is vague requires further development on the meaning

15

of the terms that K.S. has alleged are vague. For these reasons, PASD's motion to dismiss will be denied as to Count IV.

## CONCLUSION

For the reasons stated herein, Defendant's motion to dismiss will be denied as to Counts I, III, and IV, and granted without prejudice as to Count II. An appropriate order will issue.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: March 26, 2020